## 39417. REIS et al. v. RALLS et al.

HILL, Chief Justice.

This case presents a question which has not been directly addressed in Georgia. It is whether the right to use a trade name, which is sold to another in conjunction with the sale of a business and its goodwill, but in which a security interest is purportedly retained, can be reacquired by foreclosure.

In the late 1960's, James D. Reis formed a corporation to engage in the refrigeration business, known as Atlanta Refrigeration Service Company, Inc. In May, 1981, he and the corporation (hereinafter "the sellers") sold the business to Claude Ralls, Sr., and Jr. (hereinafter "the buyers") for $30,000. About half of this consideration was allocated to the value of the company's goodwill, including the name of the business. The "property" purchased was defined as follows: "The business known as Atlanta Refrigeration Service Co. located at 1746 DeFoor Avenue, N. W., Atlanta, Fulton County, Georgia 30318, including all equipment, fixtures, goodwill, inventory, and trade names, telephone numbers and telephone listings, customer lists, customer records and accounts, and all tangible assets of the business, but excluding the corporate entity, cash, notes, accounts receivable and real estate if any of the corporate Seller, as more particularly described without limitation in the Proposal attached hereto as Exhibit A." The exhibit makes clear that buyers acquired the name of the corporate seller. The agreement required a $15,000 cash downpayment with the remaining debt, secured by the described "property," to be paid in equal monthly installments with interest over 3 years. A financing statement, required by Article 9 of the Uniform Commercial Code, was filed.[1]

At the same time Reis leased to the buyers the space formerly occupied by Atlanta Refrigeration Service Company, Inc., in a building owned by Reis. In addition, Reis became an employee of Climate Contractors, Inc., the buyers' air conditioning company. The buyers then commenced doing business under the name of Atlanta Refrigeration Service Company in addition to their air conditioning business, using both names.

In January, 1982, Reis dispossessed the buyers for breach of the lease, and, on March 3, 1982, the sellers foreclosed on the property

---

[1] The financing statement listed the "equipment, fixtures, goodwill, inventory, trademarks, *trade names* and leasehold rights in and to that business known as Atlanta Refrigeration Service Co. located at 1746 DeFoor Avenue, N. W., Atlanta, Fulton County, Georgia." (Emphasis supplied.)

securing the sale, purchasing the assets found at the leased premises for $2,750. At about this time, the buyers commenced business as Atlanta Air Conditioning, Inc., d/b/a Atlanta Refrigeration Service Company and d/b/a Atlanta Refrigeration Company, dropping the word "Service" from the name. Stickers placed on equipment serviced by the buyers listed Atlanta Air Conditioning Company, Inc., and Atlanta Refrigeration Company, as did buyers' invoices and business cards. A coupon offering a $10 discount on service calls listed Atlanta Air Conditioning, Inc., and Atlanta Refrigeration Service Company.

The sellers then filed this suit seeking the balance due from the sale, recovery of certain assets securing the sales agreement, punitive damages and attorney fees, and an injunction against further use of the name Atlanta Refrigeration Service Company. The buyers answered and counterclaimed alleging fraud and breach of the sales agreement.

After a hearing, the sellers' request for a temporary injunction against the use of the name Atlanta Refrigeration Service Company and Atlanta Refrigeration Company was denied. The sellers appeal this ruling.[2]

1. A trade name is a word or name which serves to identify a person's business. See OCGA § 10-1-371 (8) (Code Ann. § 106-701); *Gordy v. Dunwoody,* 209 Ga. 627 (2) (74 SE2d 886) (1953); 27 EGL, Trade Names, Trademarks, Copyrights and Unfair Competition, § 2 (1974); 1 Nims, Unfair Competition and Trade-Marks, § 46. at p. 173 (1947). "As the symbols of a business's reputation and good will, *trade names,* trademarks and service marks employed to identify distinctly, by meaning or association, one's business, products or services *are generally regarded as a species of intangible property capable of exclusive ownership and entitled to legal protection from encroachment."* (Emphasis supplied.) 27 EGL, supra, § 3, at p. 384. "Like other types of property, trademarks may be transferred." 27 EGL, supra, § 19 at p. 396. Accord, 3 Callman, The law of Trademarks §§ 78.2, 78.3 (b) (3d ed. 1969). We find this statement of the law as to trademarks applicable to trade names where the business of a corporation, including its name, but not the corporation, is sold. See 3 Callman, supra, § 66.1 (3d ed. 1969).

---

[2] This statement of facts is intended for use only in this appeal regarding the denial of the temporary injunction as to the use of the trade names Atlanta Refrigeration Service Company and Atlanta Refrigeration Company, and we express no opinion as to the validity of any of the actions, transfers or documents herein mentioned except those essential to this interlocutory appeal.

Callman states: "A trademark and the goodwill it represents is [sic] mortgageable. . . ." 3 Callman, supra, § 78.5 (a) at p. 503. Accord, 1 Nims § 17, at p. 95. Again, we find this statement of the law applicable to a trade name where the business of a corporation, including its name, but not the corporation, is sold.

As noted above, a trade name is a species of intangible property. Article 9 of the Uniform Commercial Code, under which the agreement here in question was made, allows for the acquisition of security interests in "general intangibles." OCGA § 11-9-102 (1) (a) (Code Ann. § 109A-9—102). "General intangibles" are defined in OCGA § 11-9-106 (Code Ann. § 109A-9—106) as "any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money." The 1972 Official Comment to UCC § 9-106 clarifies this definition: "The term 'general intangibles' brings under this Article miscellaneous types of contractual rights and other personal property which are used or may become customarily used as commercial security. Examples are *goodwill,* literary rights and rights to performance. Other examples are copyrights, *trademarks* and patents, except to the extent that they may be excluded by Section 9-104(a)." (Emphasis supplied.) 3 ULA, Uniform Commercial Code § 9-106, at p. 181. Thus, it appears clear that in addition to a trademark, a trade name, along with the goodwill it represents, may be the subject of an Article 9 security interest. We conclude that the trade name here, Atlanta Refrigeration Service Company, was properly the subject of the security agreement between the parties.

The buyers defend, however, on the ground that the sellers' foreclosure on the security was defective because proper notice was not given and that therefore the sellers reacquired no rights in the trade name. Under the terms of their security agreement, notice of acceleration was necessary, but no notice of repossession was required.[3] Over 45 days' notice of acceleration was given by letter hand delivered at the time the buyers were dispossessed from the

---

[3] "Seller may at its option declare the entire indebtedness hereby secured immediately due and payable, *all with notice and demand,* and shall then have the remedies of a secured party under the Uniform Commercial Code of Georgia, as enacted on the date of execution of this Security Agreement, including, but not limited to the right to enter any premises and take possession of said property, and sell all or any part of said property at public or private sale for cash or on terms, *without demand, notice or advertising* in all respects as it may deem best for the purpose of paying the indebtedness hereby secured . . . Seller may bid and purchase at any such public sale." (Emphasis supplied.) We note here that the buyers' attorney drafted the sale documents.

leased premises in January, 1982.[4] A public auction was held on March 3, 1982, at which Reis purchased the secured property including its goodwill and trade name.[5] OCGA §§ 11-9-503, 504 (Code Ann. §§ 109A-9—503, 109A-9-504); *Ford Motor Credit Co. v. Hunt,* 241 Ga. 342 (245 SE2d 295) (1978). Therefore, we find that the foreclosure was proper as against the buyers' objections.

Accordingly, the trial court erred in refusing to enjoin the buyers from any further use of the trade name "Atlanta Refrigeration Service Company."

2. The sellers seek also to enjoin any further use by the buyers of the name Atlanta Refrigeration Company as confusingly similar to the name, Atlanta Refrigeration *Service* Company, which we have determined the sellers validly reacquired in Division 1, above.

In *Womble v. Parker,* 208 Ga. 378 (1) (67 SE2d 133) (1951), this court said: "While geographical names and words which are merely descriptive are not generally the subject of exclusive appropriation as trade-marks or trade names, such names and words when used so long and exclusively by a trader, manufacturer, or producer that they are generally understood to designate his business or merchandise, may acquire a secondary signification or meaning indicative not only of the place of manufacture, but of the name of the manufacturer or producer, or of the character of the product, so that the name or title thus employed, including the geographical name and descriptive words, may be the subject of protection against unfair competition in trade, and authorize equity to enjoin a newcomer competitor from the appropriation and use of a trade name or trade-mark bearing such resemblances to those of the pioneer as to be likely to produce uncertainty and confusion, and to pass off the goods or business of one as those of the other. [Cits.]" Accord, *Saunders System v. Drive It Yourself Co.,* 158 Ga. 1, 7-8 (123 SE 132) (1924).

The geographical name "Atlanta" and the descriptive words, "refrigeration" and "service" fall into the category of names incapable of exclusive appropriation, but capable of acquiring a secondary meaning. *Giant Mart Corp. v. Giant Discount Foods,* 247 Ga. 775, 776 (279 SE2d 683) (1981); *Saunders System,* supra.

The sellers have made the requisite showing that the trade name, Atlanta Refrigeration Service Company, has acquired such a

---

[4] The dispute over whether the letter was hand delivered on January 7 or January 11 is irrelevant to the foreclosure issue now before us.

[5] We note here that a third party in fact made a bid at the sale for $2,500 on condition that the 2 secured trucks be included, but Reis purchased the assets present at the leased premises at the time of the sale, which only included one of the trucks, for $2,750.

secondary meaning. Reis testified at the hearing below that he had been in the refrigeration business from the late 1960's until the business was sold to the buyers in 1981. When he sold the business, the buyers were willing to pay nearly $15,000 for the rights to the goodwill and trade name. In doing so, the buyers acknowledged that the name, Atlanta Refrigeration Service Company, had developed a secondary meaning.

The sellers have also carried the burden of showing that the buyers have knowingly adopted a similar name confusing to the public. "The test . . . has been whether the resemblance is so great as to deceive the ordinary customer acting with the caution usually exercised in such transaction so that he may mistake one for the other." Prosser, The Law of Torts, § 130 at pp. 957-58 (4th ed. 1971). Accord, *Multiple Listing Service v. Metropolitan Multi-list,* 223 Ga. 837, 841 (159 SE2d 52) (1968).

The sellers proved that the buyers knowingly had adopted a confusingly similar name, which has in fact confused sellers' former customers. For example, one customer, thinking he was calling the sellers, called the buyers who serviced his equipment. The customer then tendered the payment for this service to the sellers. In addition, phone calls intended for one company have been placed to the other company by confused customers. A complaint naming Atlanta Refrigeration Company as a defendant was served upon the agent for service of process of Atlanta Refrigeration Service Company, Inc. Given these incidents and the factual circumstances set out above involving the sale and repossession of the name, Atlanta Refrigeration Service Company, we find that the sellers have succeeded in showing that the buyers are knowingly using a confusingly similar name. Thus equity will enjoin. *Womble v. Parker,* 208 Ga. 378 (2), supra; OCGA §§ 23-2-55, 10-1-372 (a) (2), 10-1-451 (b) (Code Ann. §§ 37-712, 106-702, 106-112, 106-115).

We therefore find that the trial court erred in refusing to enjoin further use of the name Atlanta Refrigeration Company by the buyers.

*Judgment reversed. All the Justices concur.*

DECIDED MARCH 10, 1983.

*Fred A. Gilbert,* for appellants.
*Jones & Jones, D. Richard Jones III,* for appellees.